# United States District Court

## FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

## VENUE:  SAN FRANCISCO

FILED

APR 0 5 2022

UNITED STATES OF AMERICA,

V.

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

DMITRY OLEGOVICH PAVLOV
a/k/a "Dmitrii Pavlov,"
a/k/a "Dmitriy Pavlov,"
a/k/a ДМИТРИЙ ОЛЕГОВИЧ ПАВЛОВ

CRB

CR 22 143

DEFENDANT(S).

# INDICTMENT

18 U.S.C. § 1956(h) – Money Laundering Conspiracy;
21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A), 841(h),and 843(b) – Narcotics Conspiracy;
18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), 982(a)(1); 21 U.S.C. § 853(a); 28 U.S.C. §2461
(c); 21 U.S.C. § 853 – Forfeiture Allegation

A true bill.

_/S/ Foreperson of the Grand Jury_

Foreman

Filed in open court this _____5th_____ day of

April, 2022

/s/ Rose Maher

Clerk

THOMAS S. HIXSON
UNITED STATES MAGISTRATE JUDGE

Bail, $ WARRANT

STEPHANIE M. HINDS (CABN 154284)
United States Attorney

FILED

APR 05 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

CRB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CR 22 143

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
| Plaintiff, | VIOLATIONS: 18 U.S.C. § 1956(h) – Money Laundering Conspiracy; |
| v. | 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A), 841(h), and 843(b) – Narcotics Conspiracy; and |
| DMITRY OLEGOVICH PAVLOV, a/k/a "Dmitrii Pavlov," a/k/a "Dmitriy Pavlov," a/k/a ДМИТРИЙ ОЛЕГОВИЧ ПАВЛОВ | 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), 982(a)(1); 21 U.S.C. § 853(a); 28 U.S.C. §2461(c); 21 U.S.C. § 853 – Forfeiture Allegation |
| Defendant. | San Francisco Venue |

INDICTMENT

The Grand Jury charges:

Introductory Allegations

At times relevant to this Indictment:

1.      Defendant DMITRY OLEGOVICH PAVLOV was a Russian citizen residing in Russia.

2.      Hydra Marketplace ("Hydra") was the largest and longest-running darknet market in the world.  Created in or about 2015, Hydra enabled users in mainly Russian-speaking countries to buy and sell illegal drugs and other illicit goods and services, including stolen financial information, fraudulent identification documents, and money laundering and mixing services, anonymously and outside the

INDICTMENT

1  reach of law enforcement.  Vendors on Hydra could create accounts on the site to advertise their illegal

2  products, and buyers could create accounts to view and purchase the vendors' products.

3       3.     Transactions on Hydra were conducted in cryptocurrency.  From in or about January

4  2016 to in or about March 2022, Hydra-controlled wallets received approximately $5.2 billion USD

5  worth of cryptocurrency.  In 2021, Hydra accounted for an estimated 80% of all darknet market-related

6  cryptocurrency transactions.  Hydra's operators charged a commission for every transaction conducted

7  on Hydra.

8       4.     Hydra vendors offered a variety of narcotics for sale, including cocaine, heroin,

9  methadone, methamphetamine, LSD, and opioids.  The vendors openly advertised their narcotics on

10  Hydra, typically including photographs of the drugs and a description of the drugs.  Buyers rated the

11  sellers and their products on a five-star rating system, and the vendors' ratings and reviews were

12  prominently displayed on the Hydra site.  Drugs were sorted among categories including Марихуана

13  (Marijuana), Стимуляторы (Stimulants), Эйфоретики (Empathogens), Психоделики (Psychedelics),

14  Энтеогены (Entheogens), Экстази (Ecstasy), Диссоциативы (Dissociatives), Опиаты (Opiates),

15  Химические реактивы/Конструкторы (Chemical Reagents / Precursors), and Аптека

16  (Pharmaceuticals).

17
18
19
20
21
22
23
24
25
26



27
28

*Exhibit 1: Screenshot of Hydra Market Drug Listings*

1    5.    Hydra also featured numerous vendors selling false identification documents.  Users

2  could search for vendors selling their desired type of identification document – for example, U.S.

3  passports or drivers' licenses – and filter or sort by the item's price.  Many vendors of false

4  identification documents offered to customize the documents based on photographs or other information

5  provided by the buyers.



*Exhibit 2: Vendor listings for false identification documents.  The bottom vendor offered driver's*

*licenses for the U.S., Europe, and Russia.*

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

INDICTMENT                           3



*Exhibit 3: Additional vendor listings for false identification documents.  The bottom vendor offered passports, ID cards, and visas for the U.S., Europe, and Russia.*



*Exhibit 4: Vendor offering U.S. passports for sale.  According to the listing, the vendor would make a passport based on the buyer's biographical information.  The passports would be ready in 1-3 weeks, plus shipping.*

1    6.    Numerous vendors also sold hacking tools and hacking services through Hydra.  Hacking

2  vendors commonly offered to access online accounts of the buyer's choosing.  In this way, buyers could

3  select their victims and hire professional hackers to gain access to the victims' communications and take

4  over the victims' accounts.



*Exhibit 5: Vendor offering hacking services.  The vendor claimed expertise in hacking social*

*media accounts, websites, messengers, and emails.*

7.    Hydra vendors offered a robust array of money laundering and so-called "cash-out"

services.  Hydra included a dedicated subsection for "Обнал BTC" or "Cash out BTC."  These listings

allowed Hydra users to convert their bitcoin (BTC) into a variety of forms supported by Hydra's wide

array of vendors.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



*Exhibit 6: Vendor offering 24/7 instant exchange of bitcoin to rubles via a Russian bank card.*

8.     Outside of the cash-out vendors, Hydra restricted withdrawal options for buyers. Vendors, however, could withdraw funds to cryptocurrency addresses outside of Hydra. Hydra offered an in-house mixing service – called "Биткоин Банк Mixer," or "Bitcoin Bank Mixer" – to launder and then process vendors' withdrawals. Hydra's money laundering features were so in-demand that some users would set up shell vendor accounts for the express purpose of running money through Hydra's bitcoin wallets as a laundering technique.

9.     Promservice Ltd., d/b/a Hosting Company Full Drive, d/b/a All Wheel Drive, d/b/a 4x4host.ru (hereinafter "Promservice") was a company located in Russia that purported to operate as a hosting provider. Promservice leased dozens of servers on behalf of Hydra and controlled and administrated those servers.

10.    LegalRC.biz and Wayaway.biz were among the first online drug forums in Russia. In or about 2015, Hydra was created as a result of a claimed partnership between Wayaway and LegalRC in order to compete with another Russian darknet market that was subsequently shut down. From in or about 2013 to present, DMITRY OLEGOVICH PAVLOV managed domain services for LegalRC.biz and Wayaway.biz.

11.     From in or about November 2015 and continuing through on or about the date of this Indictment, DMITRY OLEGOVICH PAVLOV operated and controlled Promservice.  During that time, DMITRY OLEGOVICH PAVLOV and Promservice administered Hydra's leased servers, allowing the market to operate as a platform that was used by thousands of drug dealers and other unlawful vendors to distribute large quantities of illegal drugs and other illicit goods and services to thousands of buyers and to launder billions of dollars derived from these unlawful transactions.  Over the course of Hydra's lengthy operation, DMITRY OLEGOVICH PAVLOV received repeated cryptocurrency payments originating from Hydra wallets.

12.     DMITRY OLEGOVICH PAVLOV controlled the operations of Promservice and acted as an active administrator in hosting Hydra's servers.  He conspired with the other operators of Hydra to further the site's success by providing the critical infrastructure that allowed Hydra to operate and thrive in a competitive darknet market environment.  In doing so, DMITRY OLEGOVICH PAVLOV facilitated Hydra's activities and allowed Hydra to reap commissions worth millions of dollars, generated from the illicit sales conducted through the site.

STATUTORY ALLEGATIONS

COUNT ONE:          (18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering)

13.     Paragraphs 1 through 12 of this Indictment are re-alleged and incorporated as if fully set forth herein.

14.     From at least in or about November 2015, up through and including the date of this Indictment, the defendant, in the Northern District of California and elsewhere,

DMITRY OLEGOVICH PAVLOV,

and others known and unknown, unlawfully and knowingly conspired together and with one another to violate Title 18, United States Code, Section 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

15.     It was a part and an object of the conspiracy that the defendant, DMITRY OLEGOVICH PAVLOV, and others known and unknown, with the intent to promote the carrying on of specified unlawful activity and to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, to wit, conspiracy to commit narcotics trafficking, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A); conspiracy to commit identity theft, in

1   violation of Title 18, United States Code, Section 1028(f), conspiracy to commit access device fraud, in

2   violation of Title 18, United States Code, Section 1029(b)(2), conspiracy to commit computer fraud, in

3   violation of Title 18, United States Code, Section 1030(b) and, unlawfully and knowingly, and knowing

4   that property involved in a financial transaction represents the proceeds of some form of unlawful

5   activity, would and did conduct and attempt to conduct a financial transaction which in fact involved the

6   proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1).

7           All in violation of Title 18, United States Code, Section 1956(h).

8   COUNT TWO:          (21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) – Conspiracy to Distribute Narcotics)

9           16.     Paragraphs 1 through 15 of this Indictment are re-alleged and incorporated as if fully set

10  forth herein.

11          17.     Beginning in or about November 2015 and continuing through on or about the date of

12  this Indictment, in the Northern District of California and elsewhere, the defendant,

13                          DMITRY OLEGOVICH PAVLOV,

14  and others known and unknown, did knowingly and intentionally conspire, confederate, and agree

15  together and with each other to violate the narcotics laws of the United States.

16          18.     It was a part and an object of the conspiracy that the defendant, DMITRY OLEGOVICH

17  PAVLOV, and others known and unknown, would and did distribute controlled substances, in violation

18  of Title 21, United States Code, Section 841(a)(1).

19          19.     It was further a part and an object of the conspiracy that the defendant, DMITRY

20  OLEGOVICH PAVLOV, and others known and unknown, would and did deliver, distribute, and

21  dispense controlled substances by means of the Internet, in a manner not authorized by law, and aid and

22  abet such activity, in violation of Title 21, United States Code, Section 841(h).

23          20.     It was further a part and an object of the conspiracy that the defendant, DMITRY

24  OLEGOVICH PAVLOV, would and did knowingly and intentionally use a communication facility in

25  committing and in causing and facilitating the commission of acts constituting a felony under Title 21,

26  United States Code, Sections 841, 846, 952, 960, and 963, in violation of Title 21, United States Code,

27  Section 843(b).

28          21.     The controlled substances that the defendant, DMITRY OLEGOVICH PAVLOV,

INDICTMENT                            8

1   conspired to distribute included, among others, one kilogram or more of a mixture and substance

2   containing a detectable amount of heroin, five kilograms or more of a mixture and substance containing

3   a detectable among of cocaine, and 10 grams or more of a mixture and substance containing a detectable

4   amount of lysergic acid diethylamide (LSD), and 500 grams or more of a mixture and substance

5   containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, in

6   violation of Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(A).

7                                                    Overt Acts

8          22.      In furtherance of the conspiracy and to effect the illegal objects thereof, the following

9   overt acts, among others, were committed in the Northern District of California and elsewhere:

10                  a.      On or about September 15, 2020, a Hydra vendor ("Vendor 1") mailed

11                  approximately 5 grams of methamphetamine hydrochloride to a law enforcement agent

12                  acting in an undercover capacity, to a post office box located in San Francisco,

13                  California.  The package, which arrived in San Francisco on November 4, 2020,

14                  originated in Ukraine and contained 4.786 grams of methamphetamine hydrochloride, as

15                  confirmed by laboratory analysis.

16                  b.      From on or about November 2, 2021, to on or about November 3, 2021, law

17                  enforcement agents, acting in an undercover capacity, used Hydra's Bitcoin money

18                  laundering service, "Bitcoin Bank Mixer," to conduct a transaction in the amount of .015

19                  BTC, whereby the agents sent Bitcoin Bank Mixer .015 BTC.  Bitcoin Bank Mixer

20                  laundered the funds and then remitted them to the wallet specified by the agents, after

21                  taking a fee.

22                  c.      On or about March 4, 2021, PAVLOV received an invoice from a commercial

23                  data center operator, which was sent to an email account registered to Hosting Company

24                  Full Drive.  The invoice for monthly service, in the amount of € 10,038.53

25                  (approximately USD $11,135.54), was addressed to Hosting Company Full Drive.

26                  d.      On or about July 4, 2021, PAVLOV received an invoice from a commercial data

27                  center operator, which was sent to an email account registered to Hosting Company Full

28                  Drive.  The invoice for monthly service, in the amount of € 9,814.67 (approximately

INDICTMENT                                              9

1    USD $10,887.22), was addressed to Hosting Company Full Drive.

2    e.    Between on or about October 18, 2020, to on or about June 14, 2021, PAVLOV

3    logged on to the email account registered to Hosting Company Full Drive at least 500

4    times.

5    All in violation of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(A).

6    FORFEITURE ALLEGATION:    (18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), 982(a)(1); 21 U.S.C.

7    § 853(a); 28 U.S.C. § 2461(c))

8    The allegations contained above are hereby re-alleged and incorporated by reference for the

9    purpose of alleging forfeiture pursuant to Title 21, United States Code, Section 853(a).

10    23.    Upon conviction of the offense alleged in Count One above, the defendant,

11    DMITRY OLEGOVICH PAVLOV,

12    Shall, pursuant to 21 U.S.C. § 853(a), forfeit to the United States all right, title, and interest in any

13    property constituting and derived from any proceeds defendant obtained, directly or indirectly, as a

14    result of such violations, and any property used, or intended to be used, in any manner or part, to commit

15    or to facilitate the commission of such violations, including but not limited to a forfeiture money

16    judgment.

17    24.    Upon conviction of the offenses alleged in Count Two above, the defendant,

18    DMITRY OLEGOVICH PAVLOV,

19    shall, pursuant to 18 U.S.C. § 982(a)(1), forfeit to the United States any property, real or personal,

20    involved in such offense, or any property traceable to such property.

21    If any of the property described above, as a result of any act or omission of the defendant:

22    a.    cannot be located upon exercise of due diligence;

23    b.    has been transferred or sold to, or deposited with, a third party;

24    c.    has been placed beyond the jurisdiction of the court;

25    d.    has been substantially diminished in value; or

26    e.    has been commingled with other property which cannot be divided without

27    difficulty,

28    the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21,

INDICTMENT                    10

1 | United States Code, Section 853(p).

2 |     All pursuant to Title 18, United States Code, Sections 981(a)(1)(A), 981(a)(1)(C), 982(a)(1);

3 | Title 21, United States Code, Section 853(a); Title 28, United States Code, Section 2461(c), and Federal

4 | Rule of Criminal Procedure 32.2.

5 |

6 | DATED:                                          A TRUE BILL.

7 |

8 |

9 |                                                 FOREPERSON
                                                    San Francisco
10 |

11 | STEPHANIE M. HINDS                             KENNETH A. POLITE, JR.
     United States Attorney                         Assistant Attorney General, Criminal Division
12 |

13 |                                                 JOHN T. LYNCH
                                                     Chief, Computer Crime & Intellectual Property
14 | CLAUDIA A. QUIROZ                               Section
     ROBERT S. LEACH
15 | Assistant United States Attorneys

16 |                                                 C. ALDEN PELKER
                                                     CHRISTEN GALLAGHER
17 |                                                 Trial Attorneys
                                                     Computer Crime & Intellectual Property Section
18 |                                                 United States Department of Justice

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

INDICTMENT                                    11